**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
-------------------------------------------------------------------------X
**STEVEN CARTER,**

**Plaintiff,**

**-against-**                                          **20-CV-01616 (SVN)**

**TD BANK, N.A.,**

**Defendant.**
-------------------------------------------------------------------------X

### DEFENDANT'S LOCAL RULE 56(a)1
### STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant TD Bank, N.A. (**"Bank"**) respectfully submits this statement pursuant to Rule 56(a) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut to set forth the material facts as to which it contends there is no genuine issue to be tried.

### Company Background

1.      The Bank is a national bank association duly organized under the laws of the United States of America, with its main offices located in the State of Delaware at 2035 Limestone Road, Wilmington, Delaware. Ex. A at ¶¶ 2-3; Ex. B at ¶¶2-3.[1]

2.      The Bank operates various retail stores throughout the United States, including in Connecticut and Florida, for customers to utilize various services offered by the Bank in those store locations. Ex. A at ¶ 14; Ex. B at ¶ 14.

3.      In 2018 and 2019, the Bank operated a retail store in New Canaan, Connecticut. Ex. C at 9; Ex. A at ¶ 15; Ex. B at ¶ 15.

---

[1]      All references to "Ex. ___" are to the exhibits submitted with the accompanying Declaration of Michael C. Schmidt in support of the Bank's instant motion for summary judgment.

**Plaintiff Steven Carter**

4.      Plaintiff Steven Carter was employed by the Bank from August 6, 2018 until his employment was terminated effective December 3, 2019. Ex. C at 9.

5.      Plaintiff was employed as a Store Manager in the Bank's New Canaan, Connecticut store during his entire employment with the Bank. Ex. C at 9.

6.      Plaintiff was an at-will employee during his entire employment with the Bank. Ex. C at 8.

7.      Plaintiff reported to the Bank's Retail Market Manager, Kevin Taylor (**"Taylor"**), during Plaintiff's entire employment with the Bank. Ex. C at 101; Ex. D at 6.

8.      Plaintiff has a half-brother, Brian Carter, who resides in the State of Florida and owns his own business. Ex. C at 12, 89; Ex. F at 8.

**PTO/Parental Leave**

9.      The Bank has a Family and Medical Leave of Absence policy (**"FMLA Policy"**) in its Employee Handbook, which provides, among other things, that an employee may take up to twelve workweeks of leave for certain reasons if such employee otherwise complies with the terms and conditions of that policy. Ex. H at 81-87.

10.     Plaintiff was aware that the Bank had the FMLA Policy. Ex. C at 154.

11.     During his employment with the Bank, Plaintiff never requested to take leave under the FMLA policy, and never told anyone at the Bank that he needed to take FMLA leave for any reason. Ex. C at 155.

12.     The Bank also has a Paid Parental Leave policy (**"Parental Leave Policy"**) in its Employee Handbook, which provides, among other things, that an employee may take up to sixteen weeks of paid parental leave due to the birth, adoption, or placement of a child in

2

connection with adoption if such employee otherwise complies with the terms and conditions of that policy. Ex. H at 90-93.

13. Plaintiff was aware that the Bank had the Parental Leave Policy, which was known to be generous. Ex. C at 148-49, 152, 155-56.

14. The Parental Leave Policy requires, among other things, that an eligible Bank employee seeking to take leave under the Parental Leave Policy must "contact the Company's Leave Administrator[.]" Ex. H at 92; Ex. E at 21-23.

15. Plaintiff told Taylor in July 2019 that Plaintiff's wife was pregnant, and Taylor responded "that's great." Ex. C at 53-54; Ex. D at 40.

16. Plaintiff's wife was scheduled to deliver their child by C-section on January 30, 2020. Ex. C at 145; Ex. K.

17. As of the effective date of termination of his employment, Plaintiff did not comply with the Parental Leave Policy since he never contacted the Bank's Leave Administrator to initiate a leave request under the Parental Leave Policy. Ex. C at 157-58, 160-61.

18. Plaintiff did request time off separate from the FMLA Policy and/or the Parental Leave Policy due to the impending birth of his child. Ex. K.

19. Plaintiff requested a total of three weeks beginning January 23, 2020 with an anticipated return to work on February 17, 2020. Ex. K; Ex. C at 166-67, 169-70.

20. Plaintiff's request for time off in conjunction with the January 2020 birth of his child was approved. Ex. C at 170; Ex. K.

21. No one at the Bank, including Taylor, ever made any negative comment about Plaintiff being a male or about whether Plaintiff would potentially be taking parental leave. Ex. C at 55-56, 147-48.

LEGAL\57913838\1

22.     No one at the Bank, including Taylor, ever indicated having any problem with Plaintiff's request for future time off due to the birth of his child. Ex. C at 171.

23.     No one at the Bank, including Taylor, ever denied any request by Plaintiff to take future time off due to the birth of his child. Ex. C at 171.

24.     Plaintiff is aware that other male employees who reported to Taylor were granted parental leave without incident, and were permitted to return to their positions after returning from parental leave without incident. Ex. C at 175-78; Ex. D at 41.

<strong><u>Plaintiff's Alleged Anxiety</u></strong>

25.     Plaintiff believes he suffers from anxiety, which began even before Plaintiff began working at the Bank. Ex. C at 178-79.

26.     Plaintiff does not believe his anxiety prevented him from performing any of his duties or responsibilities as a Store Manager at the Bank. Ex. C at 190.

27.     Taylor never made any negative comment about Plaintiff's anxiety. Ex. C at 107.

28.     During his employment with the Bank, Plaintiff never made any requests for PTO to deal with anxiety-related issues. Ex. C at 195, 199.

<strong><u>The Termination of Plaintiff's Employment</u></strong>

29.     Plaintiff's employment with the Bank was terminated effective December 3, 2019. Ex. C at 9.

30.     No one ever told Plaintiff that his employment was terminated because of his performance as a Store Manager. Ex. C at 17, 316.

31.     Plaintiff's brother maintained personal and business accounts with the Bank in 2019. Ex. C at 223-28; Ex. I.

4

32.     On November 11, 2019, Plaintiff's brother went into the Bank's store in St. Augustine, Florida (**"St. Augustine Store"**) to express concern that he noticed new business bank accounts that had been opened in his business' name earlier that month that he did not recognize. Ex. G; Ex. D at 33-36; Ex. E at 34-35.

33.     Plaintiff's brother initially told store management in the St. Augustine Store that he did not open those accounts in early November 2019. Ex. G; Ex. C at 305.

34.     Plaintiff's brother told store management in the St. Augustine Store that he did not sign any documents to open new accounts in early November 2019, that he was in the Delaware area at the time the new accounts were opened in early November 2019, and that he wanted the accounts closed. Ex. G.

35.     Taylor did not prompt the Bank's investigation into Plaintiff's conduct, but rather the investigation was prompted by store management in the St. Augustine Store, who first reported the suspicious fraud activity to the Northeast Regional Operations Officer (**"ROO"**) based on their initial discussion with Plaintiff's brother on November 11, 2019. Ex. G. Ex. D at 33-34; Ex. C at 290, 296.

36.     Because Plaintiff's brother's statements in the Florida Store implicated conduct on the part of one of Taylor's direct reports (*i.e.,* Plaintiff), the ROO notified Taylor about the potential suspicious fraud activity. Ex. D at 33-34.

37.     In turn, Taylor had an obligation to notify Human Resources about the potential fraudulent account activity that had been reported to him. Ex. D at 34; Ex. E at 35; Ex. C at 348.

38.     Plaintiff is unaware of who made the actual decision to terminate Plaintiff's employment, but believes the decision was made by the Human Resources representative who conducted the investigation. Ex. C at 15-16; Ex. D at 30, 32.

LEGAL\57913838\1

39.    The Bank did not ask Taylor for his opinion or recommendation on whether Plaintiff's employment should be terminated. Ex. D at 30-32.

40.    Taylor did not play any role in the decision to terminate Plaintiff's employment. Ex. D at 33.

Dated: New York, New York
       June 24, 2022

Respectfully submitted,

COZEN O'CONNOR
*Attorneys for Defendant*

By:    _____
       Michael C. Schmidt (ct31056)
       3 World Trade Center
       175 Greenwich Street – 55th Floor
       New York, New York 10007
       (212) 453-3937

LEGAL\57913838\1

**<u>Certificate of Service</u>**

I hereby certify that on June 24, 2022, a copy of the foregoing Rule 56(a) Statement was filed electronically and served on all counsel and pro se parties, including anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

COZEN O'CONNOR
*Attorneys for Defendant*

By:    _____

Michael C. Schmidt (ct31056)
3 World Trade Center
175 Greenwich Street – 55th Floor
New York, New York 10007
(212) 453-3937

7