UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------------------X

STEVEN CARTER,

                                  Plaintiff,

                -against-                             20-CV-01616 (SVN)

TD BANK, N.A.,

                                    Defendant.

-----------------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**COZEN O'CONNOR**
*Attorneys for Defendant*
3 World Trade Center
175 Greenwich Street – 55th Floor
New York, New York 10007
(212) 453-3937

**ORAL ARGUMENT NOT REQUESTED/TESTIMONY NOT REQUIRED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iv

INTRODUCTION .................................................................................................................1

BRIEF FACTUAL HISTORY ..............................................................................................2

    *TD Bank*.................................................................................................................2

    *Plaintiff's Employment*........................................................................................3

    *Plaintiff's Brother's Business Accounts And The Benefit To A*
    *Store/Store Manager Of Opening/Maintaining Accounts*......................................3

    *Plaintiff Learns In Early November 2019 That His Brother's*
    *July 2019 Business Accounts Were Closed*...........................................................4

    *The Bank's Investigation Prompted By Plaintiff's Brother* .................................5

BRIEF PROCEDURAL HISTORY .......................................................................................9

LEGAL STANDARD............................................................................................................9

    *Summary Judgment – Generally*..........................................................................9

    *Summary Judgment – Employment Cases* ..........................................................11

ARGUMENT

POINT I

SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S TITLE VII
CLAIMS FOR GENDER DISCRIMINATION AND RETALIATION
BECAUSE THERE IS NO EVIDENCE IN THE RECORD BEYOND BALD
CONCLUSIONS AND SPECULATION THAT TAYLOR HAD ANY
ANIMUS TOWARD PLAINTIFF BECAUSE OF HIS GENDER ..........................................12

    A. Title VII Gender Discrimination (Count 1) ........................................................12

        1. The Standard ...............................................................................................12

i

2.  The Bank Easily Meets Its Burden To Articulate A
Legitimate Reason for Plaintiff's Termination ................................................13

3.  Plaintiff Cannot Meet His Ultimate Burden To Prove Pretext .........................17

B.  Title VII Retaliation (Count 2) ................................................................................22

1.  The Standard ....................................................................................................22

2.  Plaintiff Cannot Demonstrate A Specific "But For" Retaliatory Motive .........23

POINT II

SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S FMLA CLAIMS
BECAUSE THERE IS NO EVIDENCE IN THE RECORD THAT PLAINTIFF EVER
REQUESTED FMLA BENEFITS OR THAT ANY REQUESTS FOR TIME OFF FOR
ANY COVERED REASON WAS EVER DENIED ................................................................24

A.  FMLA Discrimination/Retaliation (Count 3) ...........................................................25

1.  The Standard ....................................................................................................25

2.  Plaintiff Cannot Create A Genuine Issue Of Material Fact To Withstand
Dismissal Of His FMLA Discrimination/Retaliation Claim ...........................25

B.  FMLA Interference (Count 4) ..................................................................................27

1.  The Standard ....................................................................................................27

2.  Plaintiff Cannot Create A Genuine Issue Of Material Fact To Withstand
Dismissal Of His FMLA Interference Claim ...................................................27

POINT III

SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S ADA CLAIMS FOR
DISABILITY DISCRIMINATION AND RETALIATION BECAUSE THERE IS NO
EVIDENCE IN THE RECORD THAT ANYONE HAD ANY UNLAWFUL BIAS OR
RETALIATORY MOTIVE TOWARD PLAINTIF BECAUSE OF ANY DISABILITY .........28

A.  ADA Disability Discrimination (Count 5) ................................................................28

1.  The Standard ....................................................................................................28

2.  Plaintiff Cannot Create A Genuine Issue Of Material Fact To
Withstand Dismissal Of His ADA Discrimination Claim ...............................29

LEGAL\58420294\1

B.  ADA Retaliation (Count 6) .............................................................................................30

    1.  The Standard ...........................................................................................................30

    2.  Plaintiff Cannot Create A Genuine Issue Of Material Fact To
        Withstand Dismissal Of His ADA Retaliation Claim...............................................30

CONCLUSION...................................................................................................................32

LEGAL\58420294\1

## TABLE OF AUTHORITIES

*Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456 (2d Cir. 2001) .....................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................................10

*Bickerstaff v. Vassar College*, 196 F.3d 435 (2d Cir. 1999) ................................................1, 11

*Brandt v. Fitzpatrick*, 957 F.3d 67 (1st Cir. 2020) ..................................................................15

*Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.*,
769 F.2d 919 (2d Cir. 1985) ....................................................................................................10

*Christopher-Ketchum v. Agway Energy Prod.*, 988 F.Supp. 610 (N.D.N.Y. 1997) .............32

*Dapkus v. Arthur J. Gallagher Serv. Co., LLC*, 2022 WL 1115406
(D. Conn. Apr. 14, 2022) ....................................................................................................24, 27

*DeAngelo v. Yellowbrook Inc.*, 105 F.Supp.3d 166 (D. Conn. 2015) ....................................29

*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016) .....................................................................10

*Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) ...................22

*Flores v. Pinnacle Group*, 2007 WL 646290 (S.D.N.Y. Feb. 27, 2007) ...............................14

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14 (2d Cir. 1995) ....................10

*Gonzalez v. City of N.Y.*, 442 F.Supp.3d 665 (S.D.N.Y. 2020) .............................................15

*Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47 (2d Cir. 1998) ............................................16

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010) .......................................................................11

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) .............................................................12

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ........................................................11

*Joseph v. Owens & Minor Distribution, Inc.*, 5 F.Supp.3d 295 (E.D.N.Y. 2014) .................16

*Jordan v. Olsten Corp.*, 111 F.Supp.2d 227 (W.D.N.Y. 2000) .............................................15

*Kelly v. Hartford Financial Servs. Grp. Inc.*, 818 Fed. Appx. 83 (2d Cir. 2020) .................28

*Kirkland v. Cablevision Sys.*, 760 F.3d 223 (2d Cir. 2014) ...................................................12

*Littlejohn v. City of New York,* 795 F.3d 297 (2d Cir. 2015)....................................................22

*Main v. Ozark Health, Inc.,* 959 F.3d 319 (8th Cir. 2020) .......................................................15

*Mancini v. Accredo Health Group, Inc.,* 411 F.Supp.3d 243 (D. Conn. 2019) .......................14, 15

*Mathew v. North Shore-Long Island Jewish Health Sys., Inc.,* 582 Fed.
Appx. 70 (2d Cir. 2014)........................................................................................................15-16

*McLee v. Chrysler Corp.,* 109 F.3d 130 (2d Cir. 1997)............................................................11, 16

*Meiri v. Dacon,* 759 F.2d 989 (2d Cir. 1985) ..........................................................................11, 14

*Meloff v. New York Life Ins. Co.,* 51 F.3d 372 (2d Cir. 1995)...................................................11

*Moore v. Kingsbrook Jewish Med. Ctr.,* 2013 WL 3968748 (E.D.N.Y. Jul. 30, 2013) ........17

*Parker v. Sony Pictures Ent., Inc.,* 260 F.3d 100 (2d Cir. 2001)..............................................10

*Phalon v. Avantor Inc.,* 2021 WL 4477404 (D. Conn. Sept. 30, 2021)...................................12, 14, 15,
29, 30-31

*Porter v. Potter,* 2010 WL 9047894 (E>D.N.Y. Jan. 21, 2020)................................................25

*Rafee v. Volvo Grp. North America, LLC,* 2022 WL 1837834 (6th Cir. June 3, 2022) .........15

*Robinson v. Zurich N. Am. Ins. Co.,* 892 F. Supp.2d 409 (E.D.N.Y. 2012) ............................16

*Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F2d 1292 (2d Cir. 1990) .......................10

*Rodriguez v. New York City Health & Hosp. Corp.,* 2015 WL 5229850
(E.D.N.Y. Sept. 8, 2015)........................................................................................................25

*Rodriguez v. Wal-Mart Stores East,* 2022 WL 844713 (D. Conn. March 22, 2022).............12

*Saad v. ASML US, LLC,* 2020 WL 12904711 (D. Conn. Sept. 4, 2020) ................................25, 27, 28

*St. Pierre v. Dyer,* 208 F.3d 394 (2d Cir. 2000) .....................................................................11

*Tarshis v. Riese Org.,* 211 F.3d 30 (2d Cir. 2000)...................................................................12

*Timbie v. Eli Lilly & Co.,* 2011 WL 2600541 (2d Cir. July 1, 2011) .....................................10, 15

*University of Texas, S.W. Med. Ctr. v. Nassar,* 570 U.S. 338 (2013)....................................23

LEGAL\58421398\1

*Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72 (2d Cir. 2015)................................23

*Walczak v. Pratt & Whitney,* 2020 WL 869817 (D. Conn. Feb. 21, 2020) ...........................22

*Woods v. START Treatment & Recovery Centers, Inc.,* 864 F.3d 158 (2d Cir. 2017)...........25

*Ya-Chen Chen v. City Univ. of N.Y.,* 805 F.3d 59 (2d Cir. 2015)..........................................15

LEGAL\58421398\1

## INTRODUCTION

> Plaintiff's feelings and perceptions of being discriminated against
> are not evidence of discrimination.

*Bickerstaff v. Vassar College,* 196 F.3d 435, 456 (2d Cir. 1999), *cert. denied,* 530 U.S. 1242 (2000).

That is this case. The crux of Plaintiff's allegations is his belief that he was discriminated against, and ultimately terminated, because he asked to take parental leave (as is permitted under the Bank's generous leave policies for its employees) after his wife was scheduled to give birth to their child in January 2020. Putting aside that Plaintiff concedes that no one ever made any negative comment about his gender or any parental leave request, and also putting aside that Plaintiff's only request for parental time off was fully *approved*, it is axiomatic that there cannot be a viable gender discrimination claim without evidence in the record of gender animus toward Plaintiff. Likewise, there cannot be a viable claim of disability discrimination or FMLA violation absent any evidence that anyone had any issue with any medical condition that Plaintiff may have had.

Yet, Plaintiff's entire case pays lip service to those truisms, centered on his unabashed, yet unsupported, subjective belief that anything was done to him *because of* his gender or any medical condition, and that he must have been terminated effective December 3, 2019 *because of* a request to take a few weeks off upon the birth of his child. Plaintiff's conclusory allegations are further belied (as also described below) by Plaintiff's acknowledgment that other male employees who reported to Plaintiff's same supervisor were granted parental leave without incident. In the end, it is beyond cavil that federal law does not recognize a viable legal claim for purely subjective feelings.

1

Instead, and as applicable to this motion, there must be evidence in the record (*i.e.,* beyond Plaintiff's own speculation or supposition) to warrant a trial on Plaintiff's claims that any adverse employment action was motivated by an unlawful bias. Now that discovery has been completed, Plaintiff's allegations are no further along than his initial pleading, which reveal themselves to be long on conclusory beliefs and woefully short on evidentiary support. Accordingly, Defendant TD Bank, N.A. (the **"Bank"**) respectfully submits this memorandum of law in support of its instant motion for summary judgment and dismissal of the Complaint in its entirety.

## BRIEF FACTUAL HISTORY

### *TD Bank*

The Bank is a national bank association that owns and operates various retail stores throughout the United States, including in Connecticut and Florida, for customers to utilize the various services offered by the Bank in those store locations. Ex. A at ¶¶ 2-3; Ex. B at ¶¶ 2-3.[1] The Bank employs thousands of individuals of all demographics, and maintains policies prohibiting all forms of discrimination, harassment, and retaliation. Ex. H. The Bank also has an express policy regarding disability accommodation and leaves of absence (including paid parental leave), and engages a third-party administrator for that purpose. *Id.*

In 2019, the Bank operated its retail stores in different regions that each had a Regional Operations Officer (**"ROO"**) who supervise more than one Retail Market Manager (**"RMM"**). Each RMM, in turn, oversees a number of stores and store managers within her or his particular retail market. In 2019, Kevin Taylor (**"Taylor"**) was the RMM responsible for the Connecticut region, including the Bank's store located in New Canaan, Connecticut (**"New Canaan Store"**).

---

[1] All references to "Ex. ___" are to the exhibits submitted with the accompanying Declaration of Michael C. Schmidt in support of the Bank's instant motion for summary judgment.

Ex. E at 19-20.

### Plaintiff's Employment

Plaintiff was hired by the Bank on August 6, 2018 to become the Store Manager of the Bank's New Canaan Store, reporting to Taylor. Ex. C at 8-9, 101; Ex. D at 10. The prior store manager at that location was retiring and Plaintiff was hired to replace that individual. Ex. D at 10. Although Taylor did not have authority to hire (or fire) store managers on his own, he was involved with the hiring of Plaintiff in August 2018, having interviewed Plaintiff and made the recommendation to move forward with his hiring. *Id.* at 6, 8-10. As discussed below, Plaintiff remained the Store Manager in the New Canaan Store for sixteen months until his employment was terminated effective December 3, 2019 based on an investigation by the Bank's Human Resources Integrity Review Team that concluded that Plaintiff engaged in improper account activity by opening business accounts in his brother's name (without his brother's knowledge) on November 6, 2019 and that Plaintiff may have forged his brother's signature on the account opening documents. Plaintiff was, at all times, an at-will employee of the Bank. Ex. C at 8.

### Plaintiff's Brother's Business Accounts And The Benefit To A Store/Store Manager Of Opening/Maintaining Accounts

Plaintiff's brother, Brian Carter, resides in Florida and is the owner of a business called Ares Security and Investigation LLC. Ex. F at 8. In July 2019, Plaintiff assisted his brother with the opening of business accounts at the Bank. Ex. C at 223-28; Ex. I.[2] The success of each store (and that store's Store Manager) is measured, at least in part, by the number of accounts that are opened, and there is a benefit to those in that store to have a greater number of accounts opened and remain open. Ex. C at 128-29. Plaintiff's New Canaan Store got credit for the accounts that were opened for Plaintiff's brother's business. *Id.* at 220, 231. On the flip side, there are negative

---

[2]  The opening of Plaintiff's brother's business accounts in July 2019 is not itself at issue in this case other than as context for Plaintiff's opening of accounts for his brother on November 6, 2019.

consequences to a store and the Store Manager in the form of a "claw back" if accounts get closed due to reasons such as lack of funding. *Id.* at 234.

### *Plaintiff Learns In Early November 2019 That His Brother's July 2019 Business Accounts Were Closed*

Relevant to this case, Plaintiff's brother's July 2019 accounts were closed by the Bank in the end of October 2019 because they were not funded with any initial deposits (a requirement for the accounts to remain open), and appeared on a report of closed accounts that Taylor received in early November 2019. Ex. C at 231-33. As noted above, there were negative financial implications for Plaintiff's store and for Plaintiff, including "claw backs," if those accounts were ultimately closed due to lack of funding and were not re-opened. On November 6, 2019 at 7:52am, Taylor e-mailed Plaintiff to schedule a call to discuss the claw back report that Taylor had received and how claw backs could be reduced going forward. Ex. J. See also Ex. C at 232-33 (plaintiff testifying that the July 2019 accounts appeared on a closed account report in early November 2019).

Plaintiff first responded to that e-mail at 7:53am by stating: "Sure thing[.]" Ex. J. However, less than an hour later at 8:40am, Plaintiff provided a second, more detailed response to Taylor's initial e-mail that stated:

> We can still have the call if you want to, but I wanted to give you a heads up. Apparently, the customer's assistant didn't fund the new accounts and just make their deposits into the primary account in error. When we spoke on the 15 day call, we were both under the impression that a portion of future deposits would occasionally go into the new accounts. Because of this, the new accounts closed due to lack of funding. The customer just asked me to re-open the accounts and transfer the money that was supposed to go there in the first place from the primary so that they are funded.

*Id.* Curiously, Plaintiff referred in his e-mail only to "the customer," and did not identify the fact that "the customer" was his brother. *Id. See also* Ex. C at 237.

4

Plaintiff testified that he first spoke with his brother about opening (or re-opening) the business accounts when Plaintiff learned about that closed account report. Ex. C at 241. Again, Taylor's e-mail to Plaintiff about the closed account report was on November 6, 2019. Ex. J. Three new business accounts were then opened by Plaintiff under his brother's business' name that very same day (*i.e.*, November 6, 2019), with Plaintiff claiming that his brother happened to be in Plaintiff's New York home from Florida to physically sign the account opening documents that day. Ex. C at 238.

### *The Bank's Investigation Prompted By Plaintiff's Brother*

In order for Plaintiff to try to support his claim that Taylor discriminated and retaliated against him, Plaintiff alleged in his attorney-drafted Complaint (at ¶ 55) that "[o]n November 12, 2019, Taylor ordered an investigation into the plaintiff." Yet, at his deposition, Plaintiff acknowledged that he did not have any idea whether Taylor ever ordered anybody to conduct an investigation into Plaintiff. Ex. C at 296. Indeed, the undisputed evidence in the record demonstrates that the investigation by the Bank that eventually lead to Plaintiff's termination was prompted by *Plaintiff's own brother*.

Specifically, on November 11, 2019 (*i.e.*, five days after the accounts at issue were purportedly opened for Plaintiff's brother on November 6th), Plaintiff's brother went into his TD Bank store in St. Augustine, Florida (**"Florida Store"**) to express concern that he saw new bank accounts under his business' name when he looked at his mobile banking app on his phone. He spoke in the Florida Store with Miranda Moser, CSR I, and Kathleen Hunt, Assistant Store Manager, and appeared adamant that he did not open those accounts that had been opened on November 6, 2019, that he had been in Delaware that week when the accounts had apparently

been opened, and that he wanted the accounts closed immediately. Ex. G.[3]

Florida Store management looked in the Bank's system at that time while Plaintiff's brother was there and determined that the accounts had apparently been opened through the New Canaan Store in Connecticut, and that Plaintiff (then identified at that point by Brian Carter as his brother) was the Store Manager for that New Canaan Store. Ex. G. Once Plaintiff's brother was told that Plaintiff was the Store Manager for the Connecticut Store where the accounts were opened, Florida Store management believed that Plaintiff's brother appeared to be more focused on making sure that his brother (Plaintiff) did not get in trouble. *Id.* Still, Plaintiff's brother did not tell Florida Store management that he had in fact opened those new accounts, or that he ever was in Plaintiff's New York home to sign account opening documents for those new accounts – let alone only five days earlier on November 6th. *Id.* Plaintiff's brother also never told Florida Store management that he no longer wanted those new accounts to be closed. *Id.* The new November 6th accounts were, and remained, closed.

Being sufficiently concerned about a customer (Plaintiff's brother) claiming that accounts were opened without his knowledge, Florida Store management informed the Florida ROO Joanne Devaney about the issue, who in turn contacted Jennifer Stacy, the ROO for the Connecticut region, about possible forgery and fraudulent account openings that should be investigated. Ex. D at 33-34; Ex. E at 34-35. Because the incident involved one of Taylor's Store Managers (Plaintiff), Ms. Stacy notified Taylor about the issue, who then brought the reported issue to Human Resources as he was required to do. Ex. D at 33-34; Ex. E at 34-35. See also Ex. C at 348 (Plaintiff testifying that Taylor did have the right to talk to HR about the issue when he heard about the potential fraudulent account activity coming from Florida).

---

[3]  Even Plaintiff understood and acknowledged that his brother initially told the Florida Store management that he (his brother) did not open the accounts on November 6, 2019. Ex. C at 305.

Human Resources escalated the potential fraudulent account activity to the Integrity Review Team on November 13, 2019, and a full investigation was conducted from November 18, 2019 through November 22, 2019 by Nancy Pelikan, the Bank's AVP, HR Advice Specialist.[4] Her investigation included a review of multiple documents and video evidence, as well as interviews of multiple current Bank employees, including Plaintiff and the two Florida Store employees who initially spoke with Plaintiff's brother and reported the issue up to their ROO. Ex. G.

Plaintiff was interviewed as part of the investigation on November 19, 2019. At that time, Plaintiff told the Bank's investigator that his brother must have "forgotten" that he had been up in his New York home to sign the account opening documents only 5 days prior to the time when his brother went to the Florida Store on November 11th to express concern over the unknown new accounts. Ex. G. Plaintiff's brother told Florida Store management that he was in the Delaware area when those new accounts had been opened and never mentioned to the Florida Store management – as Plaintiff claimed – that he was up in Plaintiff's home at the time to sign any account opening documents (to the contrary, he appeared adamant at the time that he did not sign any documents). Ex. G. However, Plaintiff claims that his brother drove up from Delaware to Plaintiff's New York home on November 5, 2019, signed the new account opening documents on November 6, 2019 while staying in Plaintiff's home, and then left Plaintiff's home on November 8, 2019 to drive back to his parents in Delaware. Ex. G; Ex. C at 141-43. After Plaintiff's investigation interview, Ms. Pelikan then spoke with the Florida Store management on November 21, 2019 to confirm what Plaintiff's brother had told them, as well as certain claims Plaintiff made during his November 19th interview. Ex. G.

---

[4]  Plaintiff chose to not depose the Bank's investigator (Nancy Pelikan) during the course of discovery in this case.

Based on all of the evidence reviewed and interviews conducted, the Bank's investigator concluded as follows:

- That Plaintiff's brother had confirmed to Florida Store management that he did not sign any account opening documents or open any accounts on November 6, 2019, and did not authorize separate $100 transfers to be made to fund those new accounts.
- That Plaintiff's brother had confirmed to Florida Store management that he was in Delaware during the time the accounts were opened on November 6, 2019, and never mentioned to Florida Store management that he was up in Plaintiff's home on November 6, 2019 and signed account opening documents there.
- That Plaintiff's brother had confirmed to Florida Store management that he did not want the new accounts to remain open and that he wanted the new accounts closed (which the Florida Store did).
- That Plaintiff did not appear credible during his investigation interview and that his contentions did not appear substantiated.
- That Florida Store Management (*i.e.,* the individuals who received the initial complaint from Plaintiff's brother) did not substantiate Plaintiff's contentions.
- That the signatures for Plaintiff's brother on the November 6, 2019 account opening documents looked different to them in comparison to the signatures on Plaintiff's brother's July 2019 account opening documents which were not disputed and the updated signature card that Plaintiff's brother signed while in the Florida Store on November 11, 2019 when he appeared to be extremely concerned about the unauthorized account activity.

Ex. G.

As a result of the investigation, Human Resources concluded that Plaintiff opened accounts in his brother's name on November 6, 2019 without his brother's knowledge or authorization, and that Plaintiff may have forged his brother's signature on the account opening documents at that time. Ex. G. Consequently, Human Resources recommended to Plaintiff's line of business (Taylor and Taylor's supervisor, Lisa Holland) that Plaintiff's employment should be terminated, and Plaintiff's employment was terminated on December 3, 2019. Ex. G; Ex. C at 311-12. Plaintiff acknowledges that no one ever told him that he was being terminated for performance-related reasons. Ex. C at 17, 316. Rather, Plaintiff was told that he was being

terminated for violating the Bank's ethics policies, and Plaintiff assumed that it had to do with his brother's accounts. *Id.* at 16, 312-13, 323.

## BRIEF PROCEDURAL HISTORY

After the EEOC terminated Plaintiff's prior administrative proceeding and issued a right-to-sue notice, Plaintiff commenced this action by the filing of a Complaint on October 27, 2020 (**"Complaint"**), after which the Bank was served and duly appeared on January 11, 2021 with the filing of its Answer (**"Answer"**). See Ex. A and Ex. B. The Complaint sets forth six separate counts:

> ➢ Count 1 – Gender Discrimination (Title VII)
> ➢ Count 2 – Retaliation (Title VII)
> ➢ Count 3 – FMLA Discrimination/Retaliation
> ➢ Count 4 – FMLA Interference
> ➢ Count 5 – Disability Discrimination (ADA)
> ➢ Count 6 – Retaliation (ADA)

The parties engaged in written discovery and depositions in the ensuing months, with the Bank filing two separate motions to compel discovery from Plaintiff on August 9, 2021 (Docket No. 16) and November 10, 2021 (Docket No. 18). All discovery was completed on May 9, 2022, and the Bank respectfully submits the instant motion for summary judgment in accordance with the parties' joint status letter submitted on May 27, 2022 (Docket No. 36) and the Court's most recent Scheduling Order issued on June 8, 2022 (Docket No. 38). As discussed more fully below, Plaintiff is unable to create a genuine issue of material fact on his six claims for relief, and thus the Bank's instant motion should be granted.

## LEGAL STANDARD

### *Summary Judgment – Generally*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In response to a motion for summary judgment, the nonmoving party must set forth specific evidentiary facts establishing the existence of a genuine issue of fact for trial. *Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292 (2d Cir. 1990).

Critically, however, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). *See also Burlington Coat Factory Warehouse Corp. v. Espirit De Corp.,* 769 F.2d 919, 923 (2d Cir. 1985) ("disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute"). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza,* 825 F.3d 89, 98 (2d Cir. 2016). Indeed, the Bank is not required to "prove a negative when it moves for summary judgment on an issue that the [Plaintiff] must prove at trial. It need only point to an absence of proof on [Plaintiff's] part, and, at that point, [Plaintiff] must designate specific facts showing that there is a genuine issue for trial." *Parker v. Sony Pictures Ent., Inc.,* 260 F.3d 100, 111 (2d Cir. 2001) (citations omitted).

Moreover, a motion for summary judgment may not be defeated based solely upon "conclusory statements . . .or 'upon the mere allegations or denials of the adverse party's pleading.'" *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). *See also Timbie v. Eli Lilly & Co.,* 2011 WL 2600541 (2d Cir. July 1, 2011) (plaintiff cannot rely on conclusory allegations to oppose summary judgment); *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir. 2000) (same); "Statements that are devoid of any specifics, but replete with conclusions,

10

are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir. 1999), *cert. denied,* 530 U.S. 1242 (2000). *See also Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) (same).

***Summary Judgment – Employment Cases***

In the employment context, it has long been settled by the Second Circuit that "[w]hen an employer provides convincing evidence to explain its conduct and the plaintiff rests upon purely conclusory allegations of discrimination, the court may conclude that no material issue of fact exists and it may grant judgment to the employer." *Meloff v. New York Life Ins. Co.,* 51 F.3d 372 (2d Cir. 1995). In fact, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.), *cert. denied,* 534 U.S. 993 (2001). *See also McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997) ("[S]ummary judgment remains available for the dismissal of discrimination claims in cases lacking in genuine issues of material fact."); *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir. 2001) (same).

While caution should generally be exercised when reviewing the record in granting summary judgment where motive and intent may be at issue, the "salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829 (1985).

11

## ARGUMENT

## POINT I

### SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S TITLE VII CLAIMS FOR GENDER DISCRIMINATION AND RETALIATION BECAUSE THERE IS NO EVIDENCE IN THE RECORD BEYOND BALD CONCLUSIONS AND SPECULATION THAT TAYLOR HAD ANY ANIMUS TOWARD PLAINTIFF BECAUSE OF HIS GENDER

**A.    Title VII Gender Discrimination (Count 1)**

**1.    The Standard**

In order to establish a *prima facie* showing of gender discrimination, Plaintiff must demonstrate: (i) that he was a member of a protected group; (ii) that he was qualified to perform his job; (iii) that he was subject to an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of gender discrimination. *Rodriguez v. Wal-Mart Stores East,* 2022 WL 844713 (D. Conn. March 22, 2022). *See also Kirkland v. Cablevision Sys.,* 760 F.3d 223, 225 (2d Cir. 2014); *Holcomb v. Iona College,* 521 F.3d 130 (2d Cir. 2008).

If Plaintiff can demonstrate his *prima facie* case, the Bank is then required to proffer a legitimate, nondiscriminatory reason for the alleged adverse action. For the Bank to meet its burden in this second step of the process, "[a]ny stated reason is sufficient; the employer need not persuade the court that the proferred reason was the actual reason for the decision." *Tarshis v. Riese Org.,* 211 F.3d 30, 36 (2d Cir. 2000). Once the Bank articulates a legitimate, nondiscriminatory reason for the adverse action, the ultimate burden shifts back to Plaintiff to demonstrate **both** that the Bank's asserted reason is "false" **and** that Plaintiff's gender was the real reason. *Id. See also Phalon v. Avantor Inc.,* 2021 WL 4477404, *9 (D. Conn. Sept. 30, 2021) (to prove pretext, Plaintiff must show "both that [defendant's] proferred reason was false and that discrimination was the real reason his employment was terminated.") (citations omitted).

12

For purposes of this motion only, the Bank does not dispute the existence of elements (i), (ii), and (iii) of Plaintiff's *prima face* case. However, Plaintiff is unable to create a genuine issue of material fact to demonstrate element (iv) of his *prima facie* case: that an adverse employment action (*i.e.,* the termination of his employment on December 3, 2019) occurred under circumstances giving rise to an inference of gender discrimination. Nevertheless, even if Plaintiff can demonstrate a threshold *prima facie* case, summary judgment is still warranted in any event because Plaintiff cannot ultimately meet his higher burden beyond conclusory statements and speculation to demonstrate that the Bank's articulated reason for the termination of Plaintiff's employment was false ***and*** that the Bank was instead motivated by specific ***gender*** animus toward Plaintiff.

### 2.    The Bank Easily Meets Its Burden To Articulate A Legitimate Reason For Plaintiff's Termination.

As noted above, Plaintiff's employment was not terminated because of performance, and no one ever told Plaintiff that his employment was being terminated for any performance-related reasons. Ex. C at 17, 316. Rather, Plaintiff's own brother triggered the series of events that resulted in Plaintiff's termination when he frantically went into the Florida Store where he did his banking to express concern that he saw new business accounts opened in his name, that he did not open the accounts and was visiting his parents in Delaware at the time they were apparently opened (up in the New Canaan Store), and that he wanted them closed immediately. Ex. G. After that incident was reported by Florida Store management through the various regional and HR reporting lines, the Bank's Integrity Review Team conducted a full investigation. *Id.* There is nothing in the record to dispute that, while Taylor was interviewed as part of that investigation, he did not otherwise play any role in the investigation. Ex. D at 33, 43.

13

To be clear, the issue on this motion is not for the Court to determine whether Plaintiff actually opened the accounts on November 6, 2019 without his brother's knowledge, or whether Plaintiff actually signed his brother's name on the account opening documents on November 6, 2019, or even whether Plaintiff was in fact credible and consistent during the Bank's investigation. Indeed, as the Court recently confirmed: Courts "are decidedly not interested in the truth of the allegations against [the] plaintiff." *Phalon v. Avantor Inc.,* 2021 WL 4477404, *12 (D. Conn. Sept. 30, 2021), *quoting Mancini v. Accredo Health Group, Inc.,* 411 F.Supp.3d 243 (D. Conn. 2019).

Rather, courts within this Circuit and others have repeatedly held that there can be no inference of discrimination (and summary judgment must be granted) if there is no evidence in the record to dispute that the Company had an honest belief about the events leading up to the employee's termination. *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.), *cert. denied* 474 U.S. 829 (1985) (summary judgment is appropriate when there is no evidence warranting a conclusion of discrimination animus, but when the evidence suggests an honest belief that plaintiff's performance did not measure up); *Flores v. Pinnacle Group,* 2007 WL 646290 (S.D.N.Y. Feb. 27, 2007) (it is not relevant for purposes of summary judgment whether plaintiff engaged in certain conduct, but whether the company had an honest belief that plaintiff did).

As the Court recently held using the applicable analysis:

> [T]he factual validity of the underlying imputation against the employee is not at issue; rather, the relevant question is what motivated the employer. . . . At this stage, the court must assume that [plaintiff's] account of how much he drank and his explanation for the fall is correct. But even then, it is the motivations of his employer that matter. And [plaintiff] has not provided evidence upon which a reasonable jury could conclude that defendant's proffered reason for terminating his employment was pretext for discriminatory animus.

14

*Phalon v. Avantor Inc.,* 2021 WL 4477404, *12 (D. Conn. Sept. 30, 2021), *quoting Mancini v. Accredo Health Group, Inc.,* 411 F.Supp.3d 243, 252 (D. Conn. 2019) (emphasis in original).

In other words, even if one were to somehow conclude that an employer's belief was mistaken, a mistaken belief is still not gender discrimination. *Brandt v. Fitzpatrick,* 957 F.3d 67 (1st Cir. 2020). And, earlier this month, the court in *Rafee v. Volvo Grp. North America, LLC,* 2022 WL 1837834, *3 (6th Cir. June 3, 2022) affirmed a grant of summary judgment, finding in part:

> As a result of the investigation, Volvo determined that while acting in his position of Team Leader—an at-will, supervisory position— Rafee violated company policy which led to his termination. The record shows that Volvo conducted a reasonably diligent inquiry into the reported allegations, which allows Volvo to rely on the facts from its investigation to support its honest belief.

*See also Main v. Ozark Health, Inc.,* 959 F.3d 319 (8th Cir. 2020) (first-, second-, and third-hand reports are acceptable sources for an employer's honest belief).

Furthermore, "[e]mployers are generally free to 'establish . . . priorities and to act upon their good faith judgments' in making personnel decisions." *Ya-Chen Chen v. City Univ. of N.Y.,* 805 F.3d 59, 73 (2d Cir. 2015). A court applying anti-discrimination statutes may not "sit as a super-personnel department that re-examines employers' judgments." *Id. See also Timbie v. Eli Lilly & Co.,* 2011 WL 2600541 (2d Cir. Jul. 1, 2011) (same). Thus, even a disagreement about how things could have been handled is still not sufficient to demonstrate pretext for gender discrimination. *Gonzalez, v. City of N.Y.,* 442 F.Supp.3d 665 (S.D.N.Y. 2020), *aff'd* 845 Fed. Appx. 11 (2d Cir. 2021). *See also Jordan v. Olsten Corp.,* 111 F. Supp.2d 227 (W.D.N.Y. 2000), *aff'd,* 25 Fed. Appx. 45 (2d Cir. 2001) (plaintiff "cannot evade precedent from this circuit which provides that Title VII does not provide remedies against poorly thought-out or unwise employment actions"); *Mathew v. North Shore-Long Island Jewish Health Sys., Inc.,* 582 Fed.

15

Appx. 70, 71 (2d Cir. 2014) (affirming summary judgment, the Second Circuit was "decidedly not interested in the truth of the allegations against the plaintiff," but rather was "interested in what *motivated* the employer.") (emphasis in original); *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997) ("disputations [of the employer's proffered explanations for the adverse action] were rationalizations for his deficiencies rather than demonstrations of any genuine issue of material fact to be tried.").

Similarly, in *Joseph v. Owens & Minor Distribution, Inc.,* 5 F.Supp.3d 295 (E.D.N.Y. 2014), *aff'd,* 594 Fed. Appx. 29 (2d Cir. 2015), the court granted summary judgment on plaintiff's discrimination claims, finding that even where plaintiff presented evidence that the employer had a mistaken understanding about the facts underlying the termination-triggering incident, plaintiff still failed to show that the reason articulated for the termination was instead based on an actual unlawful motive. And, in *Robinson v. Zurich N. Am. Ins. Co.,* 892 F.Supp.2d 409, 430-31 (E.D.N.Y. 2012), the court granted summary judgment based on the same fatal flaw as with Plaintiff's case here:

> It is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination. . . . An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.

It is also beyond cavil that the Bank "need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original). In short, "[w]hile [Plaintiff] may argue that it was unfair for the

16

[employer] to terminate his employment under the circumstances, because [Plaintiff] cannot show that the basis for the 'unfairness' was discriminatory, [Plaintiff] cannot establish that his termination 'occurred under circumstances giving rise to an inference of discriminatory intent.'" *Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 WL 3968748, *7 (E.D.N.Y. Jul. 30, 2013).

The Bank has clearly articulated a legitimate business reason for the termination of Plaintiff's employment in order to satisfy the second step of the *McDonnell-Douglas* analysis. Based on its review of documents and video evidence, as well as multiple witness interviews of current Bank employees, the Bank's Integrity Review Team concluded that Plaintiff violated the Bank's Code of Ethics by opening accounts without his brother's knowledge and, the Bank believed, by forging his brother's signature on the account opening documents based on signatures that looked different between the November 6, 2019 accounts at issue and other documents that Plaintiff's brother had unquestionably signed before. Ex. G. As a result, Human Resources recommended that Plaintiff's employment be terminated as a result of the investigation findings, and Plaintiff's employment was terminated on December 3, 2019. There is nothing in the record to dispute that Taylor played no role in the decision to terminate Plaintiff's employment. Tr. D at 30-32, 33. See also Ex. C at 15-16 (Plaintiff testifying that he believes it was the HR investigator who made the decision to terminate his employment, but cannot say for certain who actually made the decision).

### 3.    <u>Plaintiff Cannot Meet His Ultimate Burden To Prove Pretext.</u>

Plaintiff is unable to create a genuine issue of material fact to establish his *prima facie* case of gender discrimination (particularly element four). However, even if Plaintiff is able to make a threshold *prima facie* case, there is absolutely nothing in the record – again, beyond Plaintiff's own beliefs and conclusory allegations – that creates a genuine issue of material fact that the Bank's articulated legitimate business reason for the termination of his employment was

false *and also* that Plaintiff's male gender was instead the motivating factor. Accordingly, summary judgment should be granted at this time.

Plaintiff testified at his deposition that the only basis for his belief that Taylor discriminated against him is that Taylor was purportedly not happy about the fact that Plaintiff told Taylor in July 2019 that he planned to take parental time off when his wife delivered their baby in January 2020. Ex. C at 53-54, 66-67, 69, 136-37, 145. Yet, beyond Plaintiff's own allegation, there is zero evidence in the record that Taylor (or anyone else at the Bank) had a problem with – or made any derogatory comment about – the fact that Plaintiff is a male. There is similarly no evidence in the record that Taylor (or anyone else at the Bank) treated Plaintiff differently because he is a male than any similarly situated female employees.

In fact, the critical flaw in Plaintiff's case is that – even by Plaintiff's own account – there is nothing in the record to create a genuine issue of material fact that Taylor or anyone else had any animus toward Plaintiff *because he is a male*. Indeed, Plaintiff conceded at his deposition that, when he told Taylor that his wife was pregnant and that he would be taking a leave, the only thing Taylor said was "ok, that's great." Ex. C at 54-55. See also Ex. D at 40 (Taylor confirming that Plaintiff shared that his wife was pregnant and they were both very happy about it).

Beyond that, Plaintiff admitted at his deposition that no one at the Bank ever made any derogatory comment about the fact that he planned to take a parental leave:

> Q: So at no point did you have a conversation with Mr. Taylor about when you would be starting a paternity leave?
>
> A: Not to my recollection.
>
> Q: Did Mr. Taylor ever make any negative comment to you about the fact that you planned on taking a paternity leave?
>
> A: No.
>
> Q: Did anybody at the bank?

18

> A:     No.
>
> Q:     Did Mr. Taylor ever make any negative comment to you about the fact that you would be out or taking a paternity leave starting in January of 2020?
>
> A:     No.
>
> Q:     Did anyone at the bank?
>
> A:     No.

Ex. C at 147-48.

So, where is there any evidence in the record that Taylor or anyone at the Bank had any animus toward Plaintiff – let alone a discriminatory animus – because he was a male who wanted to take time off when his wife delivered their baby? There is not a scintilla of evidence in the record from which a rational jury could find gender discrimination toward Plaintiff.

Two other significant undisputed facts in the record similarly belie Plaintiff's claims. First, although Plaintiff initially alleged that he wanted to take a full four months of parental leave (the Bank generously provides up to four months of paid parental leave to female and male employees (Ex. C at 148-49)), Plaintiff later acknowledged at his deposition (i) that he never complied with the Bank's paid parental leave policy in the first place because he never contacted the Bank's third-party leave administrator to initiate a parental leave request (*Id.* at 156-58); and (ii) that the only time off he ultimately requested surrounding the January 2020 delivery of his child was for a total of three weeks from January 23, 2020 through February 17, 2020 and that *his request was approved without any issue*. As to the latter point, Plaintiff testified:

> Q:     And so is this the e-mail that you're – that you just referenced when you said you were making a change, you were notifying Mr. Gray [Taylor's administrator] of a change?
>
> A:     Correct.

19

Q:    What was the change you were making?

A:    Changing it to take 1/23 to 1/29 as PTO and start the leave on 1/30.

Q:    So it would be a three-week time period you would be out, correct?

A:    Based off of the first e-mail, correct.

Q:    So the intention, as you were advising Mr. Gray at this point, as of October 14th, 2019, was to take the one week before the January 30th C-section and then still the two weeks up until February 17th and then be back to work then, that's what you told Mr. Gray at that point?

A:    Apparently so.

Q:    At any point in time after October 14th, did you ever submit any requests or say anything to Mr. Gray about changing that further?

A:    Not that I'm aware of, no.

Q:    And looking at page – the next page which is D1193, did Mr. Gray advise you on that same day, October 14, 2019, that your PTO request for January 2020 was approved?

A:    Yes.

Q:    And you thanked him for that, correct?

A:    Yes.

Ex. C at 169-70; See also *id.* at 166-67 and Ex. K. Where is the discriminatory animus toward Plaintiff because he is a male?

Second, and perhaps most determinative of Plaintiff's gender discrimination claim, it is undisputed that other ***male*** employees who reported to Taylor took parental leave at the same time of Plaintiff's employment and returned to their positions after their parental leave without any issue. Ex. D at 41. Plaintiff conceded that point at his deposition:

Q:    Okay. Are you aware, as you sit here today, as to whether any male employees at the bank who were within Mr. Taylor's reporting chain had ever been granted parental leave?

A:    ***Yes.***

20

Q:    Who?

A:    I don't remember his name. He was a manager in one of the branches up by [*sic*] Bridgeport. I don't remember his name. He was like very close to Mr. Taylor, but I don't remember his name. . . .

Q:    And he was granted paid parental leave?

A:    *Yes.* . . .

Q:    And then, were you aware that he returned to his position after the parental leave?

A:    *Yes.*

Q:    Were you aware of any issues that this male manager had with regard to taking the paid parental leave?

A:    *No.*

Q:    Were you aware of any issues that this male manager had because he had taken paid parental leave when he returned?

A:    *No.*

Q:    And he reported directly to Mr. Taylor?

A:    *Correct.* . . .

Q:    And I'm sorry if I just asked you, do you remember what date around that was, what year?

A:    It would have been some time in 2019, but –

Q:    It's obviously when you were there at the bank?

A:    I was there, yeah.

Ex. C at 175-178 (emphasis added).

So, again, when no one at the Bank made any negative comments about Plaintiff wanting to take time off for the birth of his child, when the time off that he did request was fully approved without issue, and when other male employees reporting to Taylor took parental leave

during the same time as Plaintiff's employment and returned to their position without issue, where is there any evidence to support Plaintiff's purported belief that there was discrimination because he is a male? There is none.

In the end, Plaintiff is unable to point to any evidence in the record that would create a genuine issue of material fact on whether Plaintiff's employment ended ***because of his gender*** or that anyone at the Bank – and, specifically, Taylor – had any unlawful bias toward Plaintiff ***because of his gender***. Plaintiff cannot point to any evidence in the record that the Bank's articulated business reason for his termination was false ***and*** that gender bias toward him was instead the real reason. Accordingly, Plaintiff's Count 1 in the Complaint for gender discrimination under Title VII should be dismissed.

### B.      Title VII Retaliation (Count 2)

#### 1.      The Standard

To prevail on a retaliation claim under Title VII, Plaintiff must demonstrate: (i) that he engaged in protected activity; (ii) that the Bank was aware of Plaintiff's participation in the protected activity; (iii) that the Bank took an adverse action against Plaintiff; and (iv) that there is a causal connection between Plaintiff's protected activity and the adverse action. *Fincher v. Depository Trust and Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010); *Littlejohn v. City of N.Y.,* 795 F.3d 297, 315 (2d Cir. 2015); *Walczak v. Pratt & Whitney,* 2020 WL 869817 (D. Conn. Feb. 21, 2020).

It is axiomatic that "unlike Title VII discrimination claims, however, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 90 (2d Cir. 2015). Thus, to succeed under a more stringent "but-for" standard, Plaintiff can only avoid summary judgment by demonstrating proof that the

22

alleged adverse employment action in this case (*i.e.,* his December 3, 2019 termination) "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Texas, S.W. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013). Plaintiff cannot come close to meeting that more stringent "but-for" standard at this stage and, therefore, his retaliation claim should be dismissed.

### 2. Plaintiff Cannot Demonstrate A Specific "But For" Retaliatory Motive.

As noted above, the Bank conducted a full investigation after Plaintiff's brother told store management in the Florida Store that he was concerned about new bank accounts that he did not recognize and did not open. Ex. G. That investigation resulted in the Bank concluding that Plaintiff had opened those accounts on November 6, 2019 (again, five days before his brother told the Florida Store that he did not open those accounts) without the knowledge of the account owner (his brother) and that Plaintiff may have forged his brother's signature on the account opening documents. *Id.* As also described above, there is nothing in the record to suggest that that investigation was motivated by, or had anything to do with, the fact that Plaintiff is a male or that Plaintiff had requested and was fully approved for a three-week parental leave like other (male) employees took over the same time period.

Equally as noteworthy for this retaliation claim:

> ➤ While Plaintiff alleges issues with his supervisor Taylor, there is nothing in the record to create a genuine issue of material fact to dispute that Taylor did ***not*** initiate the investigation, and thus did engage in any retaliatory act in the first place. Plaintiff's brother and the Florida Store management initiated that investigation and only after Plaintiff's brother expressed concerns about unauthorized accounts on his mobile app.

> ➤ There is nothing in the record to create a genuine issue of material fact to dispute that Taylor was not involved in conducting the investigation or making the determination to terminate Plaintiff's employment.

> ➤ There is also nothing in the record to create a genuine issue of material fact to dispute that the Bank's Integrity Review Team and Human

23

Resources that conducted the investigation and ultimately recommended Plaintiff's termination did not have any retaliatory animus toward Plaintiff, let alone that they even knew that Plaintiff sought and was approved for three weeks off for the birth of his child.

*         *         *

In short, Plaintiff cannot point to anything in the record to suggest that anyone at the Bank had a retaliatory motive toward Plaintiff, and particularly that any retaliatory motive was the **but-for** reason for his employment ending on December 3, 2019. Accordingly, Plaintiff's Count 2 in the Complaint for retaliation under Title VII should be dismissed in its entirety.

**POINT II**

**SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S FMLA CLAIMS BECAUSE THERE IS NO EVIDENCE IN THE RECORD THAT PLAINTIFF EVER REQUESTED FMLA BENEFITS OR THAT ANY REQUESTS FOR TIME OFF FOR ANY COVERED REASON WAS EVER DENIED**

Plaintiff asserts two separate claims in the Complaint under the FMLA: first, a claim for discrimination/retaliation under the FMLA (Count 3), and, second, a claim for FMLA interference (Count 4). As the Court recently recognized:

> [A]n employee brings an "interference" claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA. . . . "Retaliation" claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer[.]"

*Dapkus v. Arthur J. Gallagher Serv. Co., LLC*, 2022 WL 1115406, *4 (D. Conn. Apr. 14, 2022), quoting *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).

Plaintiff cannot point to any genuine issue of material fact in the record on either claim, and therefore both claims under the FMLA should be dismissed.

24

### A.   FMLA Discrimination/Retaliation (Count 3)

#### 1.   The Standard

In order to demonstrate a claim of FMLA discrimination/retaliation, Plaintiff must establish that: (1) he exercised rights protected under the FMLA; (2) he was qualified for the position; (3) he suffered an adverse action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Saad v. ASML US, LLC,* 2020 WL 12904711, *5 (D. Conn. Sept. 4, 2020). *Porter v. Potter,* 2010 WL 9047894, *3 (E.D.N.Y. Jan. 21, 2010), *aff'd,* 484 Fed. Appx. 589 (2d Cir. 2012). Like with retaliation claims under Title VII (*see supra*), once the Bank offers a legitimate, nondiscriminatory reason for the termination of Plaintiff's employment, the burden shifts back to Plaintiff to "demonstrate that [the Bank's] reason was pretext for retaliation for requesting FMLA." *Saad,* 2020 WL 12904711 at *6 (citations omitted). *See also Rodriguez v. New York City Health & Hosp. Corp.,* 2015 WL 5229850, *3 (E.D.N.Y. Sept. 8, 2015). For purposes of this motion, Plaintiff cannot create a genuine issue of material fact on elements (1) and (4) of his claim and, therefore, his FMLA claim for discrimination/retaliation should be dismissed.

#### 2.   Plaintiff Cannot Create A Genuine Issue Of Material Fact To Withstand Dismissal Of His FMLA Discrimination/Retaliation Claim.

An employer cannot have acted in "retaliation for requesting FMLA" is there is no dispute that FMLA was never requested. Thus, to reject Plaintiff's claim in this case, the Court need look no further than Plaintiff's admission at his deposition that he knew about the Bank's FMLA policy but never once requested any FMLA leave during his employment:

> Q:   Were you aware that TD Bank had an FMLA policy, Family and Medical Leave Act [*sic*]?
>
> A:   Yes. . . .
>
> Q:   . . . [D]id you ever look up what the FMLA policy was at the bank during

> the time you were employed there?
>
> A:    No.
>
> Q:    Did you ever request to take FMLA leave while you were at the bank?
>
> A:    No.
>
> Q:    Did you ever tell anybody at the bank that you needed to take FMLA leave for any reason?
>
> A:    No.

Ex. C at 154-55.

Thus, while the Complaint may have asserted FMLA claims, Plaintiff's own deposition testimony should, therefore, be determinative of his FMLA claim since the Bank cannot have retaliated against Plaintiff for something he admits he never requested. In any case, as Plaintiff also acknowledges, the only time off he ***did*** request in conjunction with the future delivery of his child in January 2020 was for a total of three weeks beginning January 23, 2020 and ending February 17, 2020, and there is no dispute that that request was approved without issue. *Id.* at 166-67, 169-70; Ex. K. Other (male) employees who reported to Taylor took leave for the birth of a child – even up to the full four weeks that the Bank's policy provides – without any incident. Ex. C at 175-78; Ex. D at 41. Now that discovery has ended, Plaintiff cannot get to a trial simply based on a mere conclusory allegation in an initial pleading that the FMLA was somehow violated.

As discussed above in Point I, it is undisputed that the Bank's investigation that ultimately led to Plaintiff's termination was prompted in the first place by Plaintiff's own brother and the Bank's Florida Store management, and there is similarly no evidence in the record that such investigation – let alone, the December 3, 2019 termination itself – was based on any FMLA request that, again, Plaintiff admits he never made. *See also Saad,* 2020 WL 12904711 at

*7 ("[C]ourts typically require evidence of communications or actions expressing displeasure specifically with respect to FMLA-protected activity when an employee relies upon temporal proximity). Thus, Plaintiff cannot create any genuine issue of material fact to withstand summary judgment on his FMLA discrimination/retaliation claim and that claim should be dismissed.

### B.    FMLA Interference (Count 4)

#### 1.    The Standard

In order to demonstrate a claim of FMLA interference, Plaintiff must separately demonstrate that: (1) he is eligible for leave under the FMLA; (2) the Bank is a covered employer; (3) Plaintiff was entitled to take FMLA leave; (4) Plaintiff gave notice to his employer of his intention to take FMLA leave; and (5) Plaintiff was denied FMLA benefits to which he was entitled. *Saad,* 2020 WL 12904711 at *5. For purposes of this motion, Plaintiff cannot establish elements (4) and (5) of his claim.

#### 2.    Plaintiff Cannot Create A Genuine Issue Of Material Fact To Withstand Dismissal Of His FMLA Interference Claim.

As noted above, Plaintiff conceded at his deposition that he never requested any FMLA leave and never told anyone that he needed to take FMLA leave for any reason. Ex. C at 154-55. Plaintiff also conceded that the Bank approved the only request he ever made for time off for the birth of his child. *Id.* at 170; Ex. K. Clearly, then, there can be no genuine issue of material fact in the record to dispute that the Bank never "prevented or otherwise impeded [Plaintiff's] ability to exercise rights under the FMLA." *Dapkus,* 2022 WL 1115406 at *4.

Indeed, Plaintiff also conceded at his deposition that, with respect to any separate entitlement to the Bank's paid parental leave benefits, Plaintiff did not comply with the Bank's policy to contact the Bank's third-party leave administrator to initiate a leave of absence request. Ex. C at 155-56, 157-58. Ex. E at 21-23. *See Kelly v. Hartford Financial Serv. Grp, Inc.,* 818

27

Fed. Appx. 83, 85 (2d Cir. 2020) (there can be no interference with, or unlawful denial of, FMLA benefits when Plaintiff "never once applied for leave by the established procedures."). *Compare Saad,* 2020 WL 12904711 at *5 (granting summary judgment because plaintiff failed to follow company policy requiring certain written notice, and "[f]ailure to comply with an employer's policy governing notice, absent unusual circumstances, is grounds for denial of FMLA leave."). Thus, Plaintiff cannot create any genuine issue of material fact to withstand summary judgment on his FMLA interference claim.

*          *          *

It is now clear at the close of discovery that, while Plaintiff's attorney-drafted Complaint asserts claims under the FMLA, Plaintiff's own deposition testimony confirms that he does not have viable FMLA claims for discrimination/retaliation or interference. Accordingly, Counts 3 and 4 in the Complaint should be dismissed in their entirety.

**POINT III**

**SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFF'S ADA CLAIMS FOR DISABILITY DISCRIMINATION AND RETALIATION BECAUSE THERE IS NO EVIDENCE IN THE RECORD THAT ANYONE HAD ANY UNLAWFUL BIAS OR RETALIATORY MOTIVE TOWARD PLAINTIFF BECAUSE OF ANY DISABILITY**

**A.      ADA Disability Discrimination (Count 5)**

**1.      The Standard**

In order to demonstrate a claim for disability discrimination under the ADA, Plaintiff must demonstrate that: (1) the Bank is an employer subject to the ADA; (2) Plaintiff was disabled within the meaning of the ADA; (3) Plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) Plaintiff suffered an adverse action because of his disability. *Phalon v. Avantor, Inc.,* 2021 WL 4477404, *8 (D. Conn. Sept. 30, 2021), *quoting DeAngelo v. Yellowbrook Inc.,* 105 F.Supp.3d 166, 174

28

(D. Conn. 2015). For purposes of this motion, Plaintiff cannot create a genuine issue of material fact on element (4) of his claim.

### 2. Plaintiff Cannot Create A Genuine Issue Of Material Fact To Withstand Dismissal Of His ADA Discrimination Claim.

Like his gender discrimination and FMLA claims, Plaintiff seems to think that he can get to a trial in this case simply by referencing that he has some medical condition and that he does not believe he should have been terminated. If that were the standard, there would never be any summary judgment motions granted.

An individual has a covered "disability" under the ADA if she or he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42. U.S.C. § 12102. Plaintiff claims that he had anxiety, and that his anxiety started before he began employment with the Bank (Ex. C at 178-79) and existed at various times during his employment with the Bank (*Id.* at 190). Yet, Plaintiff concedes that any instances of anxiety did not prevent him from performing any of his job functions. *Id.* at 190. Putting aside whether Plaintiff had a covered "disability" as a threshold matter on this record, for purposes of Count 5 in his Complaint, there is zero evidence that Taylor or anyone at the Bank discriminated against him *because of* any such "disability."

Plaintiff conceded the following determinative points at his deposition:

> ➢ Plaintiff apparently mentioned to Taylor in passing back in December 2018 or January 2019 (*i.e.,* one year before his termination) that he suffered from anxiety, although Taylor never said anything negative at the time and never made any negative reference about the fact that he may have suffered from anxiety. Ex. C at 103-07.

> ➢ No one at the Bank ever made any negative comments about any anxiety or panic attacks that Plaintiff may have ever suffered. *Id.* at 191, 193-94.

> ➢ Plaintiff never made any requests to anyone at the Bank for any time off to deal with any anxiety or panic attacks. *Id.* at 193, 199, 205.

29

It is well-settled that "mere knowledge, of course, does not give rise to an inference of discrimination or retaliation even at the *prima facie* stage." *Phalon,* 2021 WL 4477404 at *10, *quoting Yetman v. Capital Dist. Transp. Auth.,* 669 Fed. App. 594, 595 (2d Cir. 2016). As in *Phalon,* Plaintiff here cannot point to any evidence in the record that any "disabilities were even a factor" in the decision to terminate his employment. *Id.* at *9. Accordingly, Count 5 in the Complaint for alleged disability discrimination under the ADA should be dismissed.

### B.    ADA Retaliation (Count 6)

#### 1.    The Standard

In order to demonstrate a claim for retaliation under the ADA, Plaintiff must demonstrate that: (1) he engaged in activity protected by the ADA; (2) the Bank was aware of that activity; (3) the Bank took adverse employment action; and (4) a causal connection between such adverse action and any protected activity. *Phalon, Inc.,* 2021 WL 4477404 at *12. For purposes of this motion, Plaintiff cannot create a genuine issue of material fact on elements (1), (2), or (4) of his claim.

#### 2.    Plaintiff Cannot Create A Genuine Issue Of Material Fact To Withstand Dismissal Of His ADA Retaliation Claim.

There is no dispute that Plaintiff never engaged in protected activity because he never requested any time off for anything related to anxiety or panic attacks, and never complained to anyone about purported disability discrimination. Ex. C at 194, 195, 199, 205. *See Phalon,* 2021 WL 4477404 at *13 (plaintiff never complained about disability discrimination, nor did plaintiff request any ADA accommodation). As the Court in *Phalon* held under similar circumstances:

> [P]laintiff has not established a prima facie case of retaliation because he did not engage in a protected activity. Even if he had, Plaintiff's retaliation claims would still fail because – like his discrimination claims [] – he has not introduced evidence establishing any causal connection between his desire to engage in those protected activities

and defendant's decision to terminate his employment.

*Id.* at *12.

For the same reason that Plaintiff's Title VII retaliation claim fails for lack of evidence that his gender was the reason for his termination, there is nothing in the record to suggest that anyone at the Bank had any retaliatory animus toward Plaintiff because he may have suffered from anxiety. And, there is surely no evidence that the Bank's separate investigation and decision to terminate his employment had anything to do with any protected activity under the ADA that never even took place. The rank conclusory allegations in the Complaint are wholly insufficient to withstand summary judgment and permit Plaintiff to get to a jury. Accordingly, Count 6 in the Complaint for alleged disability discrimination under the ADA should be dismissed.

*                    *                    *

Based on the foregoing, Counts 5 and 6 in the Complaint for disability discrimination and retaliation under the ADA should be dismissed in their entirety.

31

## CONCLUSION

Considering the relative ease of bringing a suit alleging discrimination and the difficulty and expense of defending against such a suit, courts correctly find summary judgment proper where allegations of discriminatory intent are merely conclusory.

*Christopher-Ketchum v. Agway Energy Prod.*, 988 F. Supp. 610, 613 (N.D.N.Y. 1997).

That is precisely this case.

Accordingly, Defendant TD Bank, N.A. respectfully requests that the Court grant its instant motion for summary judgment and dismiss the Complaint in its entirety.

Dated: New York, New York
      June 24, 2022

Respectfully submitted,

COZEN O'CONNOR
*Attorneys for Defendant*

By: _____
Michael C. Schmidt (ct31056)
3 World Trade Center
175 Greenwich Street – 55th Floor
New York, New York 10007
(212) 453-3937

32

## Certificate of Service

I hereby certify that on June 24, 2022, a copy of the foregoing Memorandum of Law was filed electronically and served on all counsel and pro se parties, including anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

COZEN O'CONNOR
*Attorneys for Defendant*

By: _____
Michael C. Schmidt (ct31056)
3 World Trade Center
175 Greenwich Street – 55th Floor
New York, New York 10007
(212) 453-3937

33